Tak-Ming WONG and King-Fong Wong,
Yat Sum International Corporation,
Plaintiffs-Appellants,

v.

DEPARTMENT OF STATE and Immigration and Naturalization Service,
Defendants-Appellees.

No. 84–6567.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1985.

Decided May 19, 1986.

Howard Hom, Fleming & Hom, Los Angeles, Cal., for plaintiffs-appellants.

Carolyn M. Reynolds, Asst. U.S. Atty., Los Angeles, Cal., for defendants-appellees.

Before BROWNING, Chief Judge, and KENNEDY and HUG, Circuit Judges.

HUG, Circuit Judge:

This action concerns the validity of the revocation of nonimmigrant visas by a consular officer. Appellants Tak-Ming Wong, his wife, King-Fong Wong, and his employer, Yat Sum International Corporation, appeal from the district court's summary judgment affirming the revocation of the nonimmigrant visas of Mrs. Wong and the Wongs' minor children. The issues before us on this appeal are: (1) whether the Wongs failed to exhaust their administrative remedies, and (2) whether the applicable statutes and regulations authorized the consular officer to revoke the visas on the grounds asserted.

## FACTS

Appellant Yat Sum International Corporation ("Yat Sum"), a subsidiary of Yat Sum Land Investment Company based in Hong Kong, employed Mr. Wong as manager of its California operations. In order to work in the United States, Mr. Wong sought to obtain for himself an intracompany transferee visa, known as an L–1 visa,[1] and visas known as L–2 visas for his spouse and minor children. After the initial processing, Mr. Wong, accompanied by his attorney, flew to Pago Pago, American Samoa, to secure the visas for himself and his family. Mrs. Wong and the children did not personally appear for an interview at the American Consulate in Pago Pago. The visa-issuing officer approved the applications and the appropriate endorsement stamps were affixed to all passports.

On May 20, 1983, Mr. Wong and his family arrived at the Los Angeles International Airport from Hong Kong and presented the nonimmigrant visas issued in Pago Pago. In accordance with instructions received by wire on January 24, 1983 from the State Department, the Immigration and Naturalization Service ("INS") inspector questioned them concerning whether they obtained the visas without being personally present in Pago Pago.[2] Mr. Wong stated under oath that while he personally appeared at the American Consulate, his wife and children did not. The INS inspector notified the State Department by telephone of the apparent deficiency, and a State Department official revoked the visas of Mrs. Wong and the children because they had not personally appeared at the American Consulate in Pago Pago. Mrs. Wong and her children were advised that they had not established that they were admissible into the country and were instructed to appear for deferred inspection at the local INS office on May 23, 1983 for a final determination on their admissibility. Mr. Wong, who personally appeared in Pago Pago, was admitted into the country under his L–1 visa.

Mrs. Wong and her children, accompanied by their attorney, appeared for deferred inspection. The INS inspector opined that they did not appear to be admissible and could either withdraw their request for admission or elect to have an exclusion hearing before an immigration

---

1. Mr. Wong was classified as an L–1 nonimmigrant pursuant to 8 U.S.C. § 1101(a)(15) (1982).

2. This questioning was specifically instituted in response to the State Department's discovery that nonimmigrant visas were being issued in Pago Pago in apparent violation of the immigration laws and regulations. A pattern developed whereby aliens outside American Samoa were obtaining nonimmigrant visas even though they had never been to Pago Pago, American Samoa.

judge. They opted for a hearing and were served with notices to appear for an exclusion hearing, scheduled to commence on June 2, 1983.

On May 24, 1983, the INS received a teletype from Mr. Goelz, Deputy Assistant Secretary for Visa Services, Bureau of Consular Affairs, Department of State. Mr. Goelz's teletype states in relevant part as follows:

> This is to certify that I, the undersigned consular officer, acting in pursuance of the authority conferred by section 221(i) of the Immigration and Naturalization Act and 22 C.F.R. § 41.134, hereby revoke the nonimmigrant visas, L-2, issued at the office of the Governor of American Samoa, Pago Pago, American Samoa, on November 22, 1982....

Mrs. Wong and the children were paroled into the United States and have remained since that time.

■ On July 18, 1983, Mr. Wong, Mrs. Wong, and Yat Sum brought a class action for declaratory and injunctive relief against the Department of State and the INS, alleging violations of the Immigration and Nationality Act, 8 U.S.C. § 1104(a) (1982), 22 C.F.R. §§ 41.130 and 41.134 (1983); the Administrative Procedure Act, 5 U.S.C. §§ 553(b)–(d) and 706 (1982), and the due process clause of the fifth amendment. The district court granted summary judgment to appellees on October 11, 1984.[3] Mr. Wong's visa was not revoked, and Yat Sum still has the benefit of his services. The district court correctly ruled that there is no case or controversy as to Yat Sum or Mr. Wong. Mr. Wong does not allege standing as representative of the children to challenge the revocation of their visas. Neither Yat Sum nor Mr. Wong has standing to contest the revocation of Mrs. Wong's visa. We are, thus, here concerned only with the appeal of Mrs. Wong for herself and as representative of her children.

## STANDARD OF REVIEW

We review *de novo* a grant of summary judgment by the district court, *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). In reviewing agency action, both the district court and this court apply the same deferential standard. The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (1982), provides that "the reviewing court shall ... hold unlawful and set aside agency action findings and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this deferential standard, we can reverse the district court's decision to revoke Mrs. Wong's visa only if the Secretary of State violated the law or committed a clear error in judgment. *See Knoetze v. United States,* 634 F.2d 207, 209 (5th Cir.), *cert. denied,* 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981); *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 284–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). Traditionally, an agency's interpretation of its own regulations is entitled to a high degree of deference. *Sierra Club v. Clark,* 756 F.2d 686, 690 (9th Cir.1985); *Hawaiian Electric Co. v. EPA,* 723 F.2d 1440, 1447 (9th Cir.1984).

## STATUTORY AND REGULATORY BACKGROUND

Under the conditions and limitations prescribed by the Immigration and Nationality Act ("Act") and the regulations promulgated thereunder, a consular officer may issue a nonimmigrant visa to a nonimmigrant who has made a proper application. 8 U.S.C. § 1201(a)(2) (1982). "Consular officer" is defined by 8 U.S.C. § 1101(a)(9) (1982) as "any consular, diplomatic, or other officer of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas." The regulations designate "commissioned consular officers, the District Administrators of the Trust Territory of

---

**3.** The appellants withdrew their request for class certification on October 6, 1983.

the Pacific Islands, the Director of the Visa Office of the Department [of State] and such other officers of the Department as he shall designate for the purpose of issuing nonimmigrant visas" as consular officer. 22 C.F.R. § 41.1 (1981).

The provisions of 8 U.S.C. § 1201(g) specify that a nonimmigrant visa shall not be issued by the consular officer if (1) it appears to the consular officer that the alien is ineligible to receive a nonimmigrant visa under 8 U.S.C. § 1182, or any other provision of law, (2) the application fails to comply with the Act, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa under 8 U.S.C. § 1182, or any other provision of law. 8 U.S.C. § 1201(g) (1982). The statute requires that an alien's application for a nonimmigrant visa shall be made in such form and manner as prescribed by the regulations. 8 U.S.C. § 1202(c) (1982). 22 C.F.R. § 41.110(a) (1983) sets forth the manner for making visa applications.

> [E]very alien applying for a regular or official visa shall make application to the consular officer in the consular district in which he has as his residence, except that a consular officer shall at the direction of the Department, or may in his discretion, accept an application for a nonimmigrant visa from an alien having no residence in the consular district *if the alien is physically present therein.*

[Emphasis added.] [4]

Congress has conferred upon the consular officer and the Secretary of State plenary power to revoke a visa in the following language.

> After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa.... [S]uch revocation shall invali-

date the visa or other documentation from the date of issuance....

8 U.S.C. § 1201(i) (1982).

Under the Foreign Service Act of 1980, 22 U.S.C. § 3921 (1982), the Secretary of State is charged with administering and directing the Foreign Service, which includes consular officers. In implementing his statutory authority to revoke nonimmigrant visas, the Secretary of State has adopted regulations delegating to all consular officers the power to revoke nonimmigrant visas and specifying the grounds and procedures for doing so.

The provisions of 22 C.F.R. § 41.134(a) (1983), authorize a consular officer to revoke a nonimmigrant visa subsequent to its issuance on two specific grounds: ineligibility to receive the visa under section 212(a) of the Act, 8 U.S.C. § 1182(a), and non-entitlement to the nonimmigrant classification under section 101(a)(15) of the Act, 8 U.S.C. § 1101(a)(15). Section 41.134(a) states as follows:

> *Grounds for revocation.* A consular officer is authorized to revoke ab initio a nonimmigrant visa issued to an alien if, subsequent to the issuance of such visa, he finds that at the time of issuance the alien was ineligible under section 212(a) of the Act to receive such visa or was not entitled to the nonimmigrant classification under section 101(a)(15) of the Act specified in such visa.

An alien whose visa has been revoked has the right to request that the consular officer reconsider his decision to revoke. 22 C.F.R. § 41.134(g)(1) (1981).

## DISCUSSION

### A. *Mootness*

■ We are informed that appellants were admitted into this country on November 8, 1985 pursuant to the visa waivers granted by the immigration judge. The Government contends that the appeal is

---

**4.** 8 U.S.C. § 1202(e) (1982) also requires that the application be signed and verified by oath before the consular officer unless otherwise prescribed by the regulations. This aspect of the application procedure was not designated as a ground for the revocation and is not contended by the Government to be the basis for the revocation.

now moot. Because the visa waivers afford appellants only a portion of the remedy sought and place appellants in a substantially less favorable position than had their L–2 visas been reinstated, this appeal is not moot.

The doctrine of mootness requires courts to dismiss cases where "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (quoting *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)); *accord Walker v. Huston*, 689 F.2d 901, 902 (9th Cir.1982). Where "interim relief or events have completely and irrevocably eradicated the effects of [an] alleged violation" of law and there is no reasonable expectation that the violation will recur, a case is moot. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Partial relief in another proceeding does not moot an action seeking additional relief. 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3533.2 at 242–43 (2d ed. 1984).

Appellants seek reinstatement of their nonimmigrant visas and, thus seek the benefits flowing to an L–2 visa holder that are otherwise unavailable to a nonimmigrant entering this country on a visa waiver. For example, an L–2 visa holder has a right to revalidation of the visa before its expiration, a right that is not available to a nonimmigrant entering and residing in this country without such documentation. 22 C.F.R. § 41.125(g) (1981). Appellants have not already received everything they ask for in this action. Their claim is not moot.

### B. *Exhaustion of Remedies*

The district court held that it lacked subject matter jurisdiction because of Mrs. Wong's "failure ... to exhaust administrative remedies, ... and a failure to state a claim for which relief can be granted."

Presumably, the district court agreed with the Government's contentions that the visa holders are required to request reconsideration of the visa revocation by the consular officer who revoked their L–2 visas and, either additionally or alternatively, are required to present new applications for nonimmigrant visas to an American consular officer abroad.[5]

Unless statutorily mandated, application of the doctrine of exhaustion of administrative remedies lies in the sound discretion of the district court. *See Reid v. Engen*, 765 F.2d 1457, 1462 (9th Cir.1985). This judicially created doctrine "does not limit jurisdiction; rather, it permits courts to decide whether to exercise jurisdiction." *Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir.1985). Where, as here, there is no statutory or regulatory exhaustion requirement, the administrative agency's interest in applying its expertise, making a proper record, and maintaining an efficient, independent administrative system should be balanced against the interests of private parties in finding adequate redress. *Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*, 705 F.2d 1502, 1509 (9th Cir.1983), *rev'd on other grounds sub nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

■ We find that under either theory asserted by the Government and presumably relied upon by the district court, it was an abuse of discretion to require exhaustion of these purported administrative remedies. A request for reconsideration to the person making the decision is not generally considered a procedure that must be exhausted. In this particular case, a request for reconsideration of the consular officer's revocation order would have been futile because the consular officer who revoked the visas indicated in his deposition that he would not reconsider any revocation based on lack of physical presence. Further, requiring the appellants to leave

---

**5.** The Government does not contend that the exclusion hearing is an administrative procedure that must be exhausted as a remedy for a visa revocation.

the United States to submit an application for a new nonimmigrant visa at another consulate is not a remedy for an error in revoking these visas. The appellants are entitled to litigate the validity of the revocation of their nonimmigrant visas that were issued.

### C. *Revocation of the Visa Ab Initio*

The district court appears to have ruled in the alternative that the visa was properly revoked under the applicable statutes and regulations. We therefore also address that issue as a matter of law, which may be determined in this appeal without the necessity of a remand.

Although 8 U.S.C. § 1201(i) grants to the Secretary of State broad authority to revoke a nonimmigrant visa, the regulation that implements that authority, 22 C.F.R. § 41.134(a), delegates that authority to all consular officers, but circumscribes such authority to two limited instances: if it is found that the visa holder was ineligible under 8 U.S.C. § 1182 to receive such visa, or if the visa holder was not entitled to nonimmigrant classification under 8 U.S.C. § 1101(a)(15).

█ The parties have consistently maintained that Mr. Goelz, Deputy Assistant Secretary for Visa Services, acted in his capacity as a consular officer in revoking the nonimmigrant visas. 22 C.F.R. § 41.1 defines "consular officer" as including the Director of the Visa Office of the Department and his designate. Mr. Goelz, a lawfully recognized consular officer, revoked the nonimmigrant visas on the basis that Mrs. Wong and the children were not physically present within the consular district. Such a basis is not one of the permissible grounds enunciated by 22 C.F.R. § 41.134(a). The evidence reflects that Mrs. Wong and her children do not fall within either of these categories and, as such, the *ab initio* revocation of their nonimmigrant visas was improper.

8 U.S.C. § 1182(a) specifies 33 categories of people who are ineligible for visas and who shall be excluded from admission to the United States. Grounds for ineligibility include insanity, drug addiction, criminal conviction and the like. It is not contended that any of these exclusionary categories are applicable to the Wongs.

8 U.S.C. § 1101(a)(15) classifies persons entitled to nonimmigrant status. The Wongs were issued L–2 visas as the wife and children of an alien admitted under an L–1 visa pursuant to the terms of 8 U.S.C. § 1101(a)(15)(L). There is no contention that they are not properly classified as nonimmigrants under 8 U.S.C. § 1101(a)(15)(L). There is no dispute that Mr. Wong has an ongoing business relationship with Yat Sum in this country and that the requisite familial relationship exists between Mr. Wong and his wife and children.

Although the consular officer is supposed to assure the physical presence of the applicant within the consular district before issuing the nonimmigrant visa, this procedural deficiency is not one of the grounds specified for revocation of the visa after its issuance. Instead, the regulation looks to the substance of the visa qualifications—whether the alien is inappropriately classified for the type of visa obtained and whether the alien is within the group of people listed in 8 U.S.C. § 1182(a) that would be ineligible for a visa regardless of their classification.

The regulation makes good sense. Upon issuance of a visa by the consular officer, the alien should be able to expect that the consular officer has taken all the necessary steps to assure that the appropriate procedural details have been fulfilled. Relying on this, Mrs. Wong and her children traveled to the United States. To revoke a nonimmigrant visa at that stage because the consular officer failed to ensure that the correct procedures were followed, when the alien is actually qualified to receive the visa, seems harsh, indeed. Aliens entering any foreign country are naturally quite dependent upon the consular officers to ensure that the appropriate procedural requirements to obtain visas to enter the foreign country are satisfied. The revoca-

tion regulation appropriately draws a distinction between substantive eligibility for the visa and procedural defects in its issuance.

The physical presence requirement is a procedural requirement that falls outside the authorized grounds for visa revocation set forth in 22 C.F.R. § 41.134(a). While the absence of Mrs. Wong and the children from the place where the nonimmigrant visas were issued was in contravention of a regulation concerning the issuance of the visas, that circumstance cannot support a revocation of their otherwise lawfully issued nonimmigrant visas. The consular officer had no authority under the governing regulation to revoke the visas. We reverse the district court's summary judgment for appellees and remand with instructions to enter judgment for Mrs. Wong and to vacate the order revoking the visas of Mrs. Wong and her children.

REVERSED AND REMANDED.